*1014
 
 BOLIN, Justice.
 

 This appeal is from a judgment in a declaratory-judgment action seeking an interpretation and declaration of the legal effect of certain language in a deed.
 

 Facts and Procedural History
 

 On November 6, 2008, William Buxton and Judy Buxton filed a complaint for a judgment declaring certain language in a deed conveying real property to them to be a conveyance of the property in fee simple with a right of survivorship. The Buxtons brought the action against the law firm Ernest W. Ball & Associates, Inc. (hereinafter “Ball”), that had prepared the deed. The deed was attached to the complaint and states as follows:
 

 “KNOW ALL MEN BY THESE PRESENTS, that for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to the undersigned Grantors, in hand paid by the Grantees herein, the receipt whereof is hereby acknowledged, THOMAS F. LOPPNOW AND WIFE, RONNA L. LOPPNOW, herein referred to as Grantors, do hereby grant, bargain, sell and convey unto WILLIAM BUXTON AND JUDY BUXTON, HUSBAND AND WIFE, herein referred to as Grantees, for and during their life and upon their death, then to their heirs in fee simple, together with every contingent remainder and right of reversion, the following described real estate hereinafter the ‘Premises’, situated in MORGAN County, Alabama, to-wit
 

 “[Description of the property]
 

 “THERE ARE EXCEPTED FROM THE WARRANTIES OF THIS DEED ALL EASEMENTS, RESTRICTIONS OF RECORD, AND CURRENT AD VALOREM TAXES.
 

 “AND SAID GRANTORS DO, for themselves and their heirs and assigns, covenant with said Grantees, their heirs and assigns that they are lawfully seized in fee simple of said premises; that it is free from all encumbrances, except as otherwise noted above, that they have a good right to sell and convey the said premises; that they will warrant and defend the same unto the said Grantees, their heirs, executors and assigns forever, against the lawful claims of said Grantors and all persons claiming by and through said Grantors, but not against the claims of any others, except for current ad valorem taxes, restrictions, easements, ways and building setback lines applicable to the above described property, if any, as shown of record in said Probate Office.”
 

 Ball answered and asserted several affirmative defenses. On January 7, 2009, the Buxtons filed a motion for a summary judgment. On March 24, 2009, the Bux-tons filed a motion to add Blake Horton and Devon Horton
 
 [1]
 
 as defendants because their interests might be adversely affected by a judgment and to appoint a guardian ad litem to represent any unknown heirs of the Buxtons. On May 1, 2009, the trial court added the Hortons as defendants and appointed Christopher M. Priest as guardian ad litem. On May 18, 2009, Priest filed an answer. On September 28, 2009, Priest filed a response to the Bux-tons’ summary-judgment motion. On May 25, 2010, Ernest Ball, a principal in Ball, filed an affidavit stating:
 

 “I am an attorney and the owner of the law firm, Ernest W. Ball & Associates, Inc. On May 27, 2003, my firm
 
 *1015
 
 prepared a deed in which property was purchased by the [Buxtons]. The deed was recorded at Book 2003, Page 3781 in the Probate Office of Morgan County, Alabama on May 29, 2003.
 

 “The deed stated that the property was conveyed to the [Buxtons] ‘for and during their life and upon their death, then to their heirs in fee simple, together with every contingent remainder and right of reversion.’ (hereinafter ‘the Subject Language’). The Subject Language is ambiguous and not very clear so in at least 75 deeds in Morgan County alone, the language has been construed to convey a fee simple interest as evidence of the deed being overwritten.”
 

 On May 26, 2010, the trial court entered a summary judgment in favor of the Bux-tons, holding, in pertinent part, as follows:
 

 “On May 27, 2003, Ernest W. Ball & Associates, Inc. prepared a deed in which property was purchased by the [Buxtons]. The deed was recorded in the Probate Office of Morgan County, Alabama on May 29, 2003. The deed stated that the property was conveyed to the [Buxtons] ‘for and during their life and upon their death, then to their heirs in fee simple, together with every contingent remainder and right of reversion.’ This action is to determine whether the language contained in the deed was ambiguous, and, as such, whether the ambiguity was to be resolved in favor of fee simple, or whether the language clearly created a lesser estate.
 

 “Section 35-4-2 of the Code of Alabama (1975), as amended, states, ‘[e]very estate in lands is to be taken as fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended.’ In
 
 Haclcer v. Carlisle,
 
 the Supreme Court of Alabama interpreted the statute to say ‘[u]nder this statute, the presumption is, and all doubts are resolved in the favor of a fee simple estate.’ 388 So.2d 947, 950 ([Ala.] 1980). See also
 
 Moss v. Williams,
 
 822 So.2d 392, 396-397 ([Ala.] 2001). In
 
 Windham v. Henderson,
 
 the Supreme Court applied the statute by saying, ‘[t]he intention to create a lesser estate must clearly appear, for the courts will not construe a grantor’s words as conveying a lesser estate if clearly a different meaning can be given them.’ 658 So.2d 431, 433 [ (Ala.1995) ].
 

 “In
 
 Hacker,
 
 the Supreme Court noted numerous cases where deeds used language such as ‘lifetime’ or ‘at his death,’ and the Court found the language insufficient to overcome the presumption.
 
 Hacker
 
 at 951. The Court further stated ‘[a]nd the language “but it is to go to his heirs” indicates merely words of limitation or inheritance.’
 
 Id.
 

 “Further, in
 
 Hacker,
 
 the Court examined an Oregon Supreme Court case which interpreted deed language pursuant to a statutory provision similar to Alabama Code Section 35-4-2 (1975), as amended. The Alabama Supreme Court stated as follows:
 

 “ ‘The Oregon court also noted that the word “heirs” in the clause merely designated the person who would by statute succeed to the property in case of intestacy. Rejecting the argument that the language created a life estate with remainder, the [Oregon] court stated:
 

 “ ‘ “Where there is a doubt as to whether the grantor intended to convey an estate in fee simple or a life estate, the doubt should be resolved in favor of the grantee and the greater estate would pass. This rule of construction is in keeping with the spirit of the statute....’”
 

 
 *1016
 

 “Hacker
 
 at 951-952.
 

 “Pursuant to Section 35-4-3 of the Code of Alabama, in the present action, the language contained in the deed is ambiguous, and, as such, shall be construed as granting a fee simple estate.
 

 “Having reviewed the pleadings, the [Buxtons’] Motion for Summary Judgment and supporting evidence, the Court finds that there are no genuine issues of material disputed fact and that the [Buxtons] are entitled as a matter of law to the requested relief. It is, therefore, ORDERED, ADJUDGED, and DECREED by the Court that the deed language used by Ernest W. Ball, ‘for and during their life and upon their death, then to their heirs in fee simple, together with every contingent remainder and right of reversion’ is ambiguous and unclear and does not clearly state that a less estate was intended. Therefore pursuant to Alabama Code Section 35-4-2 (1975), as amended, the [Bux-tons’] interest in said land is in fee simple.”
 

 The trial court made the summary-judgment order final pursuant to Rule 54(b), Ala. R. Civ. P. Priest timely appealed.
 

 Standard of Review
 

 “ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.... ’
 
 McClendon v. Mountain Top Indoor Flea Market, Inc.,
 
 601 So.2d 957, 958 (Ala.1992).
 

 “‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial' judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).’
 

 “Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,
 
 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo.
 
 Alabama Republican Party v. McGinley,
 
 893 So.2d 337, 342 (Ala.2004).”
 

 Alabama Elec. Coop. v. Bailey’s Constr. Co.,
 
 950 So.2d 280, 283 (Ala.2006).
 

 Discussion
 

 Section 35-4-2, Ala.Code 1975, provides: “Every estate in lands is to be taken in fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended.” The issue before this Court is whether the deed in question clearly establishes that an estate lesser than fee simple, i.e., a life estate, was created, or whether an ambiguity was present such that § 35-4-2 mandates that the Buxtons took a fee-simple estate in the property.
 

 In
 
 Barnett v. Estate of Anderson,
 
 966 So.2d 915, 918 (Ala.2007), this Court reaffirmed the following principle:
 

 
 *1017
 
 “Regarding the construction of deeds, it is well settled that a deed is construed most strongly against the grantor. See
 
 Moss v. Williams,
 
 822 So.2d 392, 396-97 (Ala.2001) (‘This Court has long recognized that § 35-4-2 is simply “a statutory affirmance of the general rule that a deed is construed most strongly against the grantor.” ’). ‘[G]reater strictness is required in the construction of deeds than of wills.’
 
 Porter v. Henderson,
 
 203 Ala. 312, 315, 82 So. 668, 671 (1919).”
 

 In construing deeds, this Court stated in
 
 Financial Investment Corp. v. Tukabatchee Area Council, Inc.,
 
 353 So.2d 1389, 1391 (Ala.1977):
 

 “It is, of course, a fundamental rule of construction that the real inquiry in construing the terms of a deed is to ascertain the intention of the parties, especially that of the grantor, and if that intention can be ascertained from the entire instrument, resort to arbitrary rules of construction is not required.
 
 Wilkins v. Ferguson,
 
 294 Ala. 25, 310 So.2d 879 (1975);
 
 Gulf Oil Corp. v. Deese,
 
 275 Ala. 178, 153 So.2d 614 (1963).
 

 “The courts, in construing conveyances, must ascertain and give effect to the intention and meaning of the parties, ‘to be collected from the entire instrument.’
 
 Brashier v. Burkett,
 
 350 So.2d 309 (Ala.1977);
 
 Stratford v. Lattimer,
 
 255 Ala. 201, 50 So.2d 420 (1951).
 

 “... It is, of course, true that where a deed is of doubtful meaning, or where the language of a deed is ambiguous, the intent of the parties to the deed as to what property is conveyed may be ascertained by reference to facts existing when the instrument was made, to which the parties may be presumed to have had reference.
 
 Lietz v. Pfuehler,
 
 283 Ala. 282, 215 So.2d 723 (1968).
 

 “However, if the language is plain and certain, acts and declarations of the parties cannot be resorted to, to aid construction.
 
 Id.; Hall v. Long,
 
 199 Ala. 97, 74 So. 56 (1916).
 

 [[Image here]]
 

 “In ascertaining the intention of the parties, the plain and clear meaning of the deed’s terms must be given effect, and parties must be legally presumed to have intended what is plainly and clearly set out.
 
 Camp v. Milam,
 
 291 Ala. 12, 277 So.2d 95 (1973).”
 

 With these rules of construction in mind, we now turn to the deed in the present ease and try and ascertain the intent of the grantors from the four corners of the instrument, reconciling all provisions if possible. The granting clause conveys the property to the Buxtons “for and during their life and upon their death, then to their heirs in fee simple, together with every contingent remainder and right of reversion.... ” The deed next contains a description of the property, and the only other clause is a warranty clause that provides as follows: “[T]hat they will warrant and defend the same unto the said Grantees, their heirs, executors and assigns forever, against the lawful claims of said Grantors....”
 

 The trial court entered a summary judgment in favor of the Buxtons on the ground that the language in the granting clause was ambiguous and that, based on the presumption of § 35-4-2, it did not reserve a life estate in favor of the Bux-tons. Applying § 35-4-2, this Court has stated: “The intention to create a lesser estate must clearly appear, for the courts will not construe a grantor’s words as conveying a lesser estate if clearly a different meaning can be given them.”
 
 Windham v. Henderson,
 
 658 So.2d 431, 433 (Ala.1995). The trial court’s reliance on § 35-4-2 to support the finding of a fee-simple estate
 
 *1018
 
 is misplaced because the granting clause in the present case contains words that clearly and expressly convey a life estate. The trial court also relied on
 
 Hacker v. Carlisle,
 
 388 So.2d 947 (Ala.1980), in which this Court held that the language in the deed, when viewed as a whole, coupled with the parties’ conduct after the conveyance, indicated that the estate conveyed was in fee simple.
 

 In
 
 Hacker,
 
 Jasper Carlisle executed a deed in 1914 giving real property to his son, John. The deed contained a handwritten clause providing: “It is understood that [John Carlisle] is not to sell above described lands but it is to go to his heirs.” 388 So.2d at 949. After John Carlisle died, his heirs sought an interpretation and declaration of the interest conveyed by the deed. The trial court found that Jasper had conveyed a life estate to John with a remainder to John’s heirs. This Court reversed the trial court’s judgment. It noted that all the clauses except the handwritten clause were consistent with the conveyance of a fee-simple estate. Although the granting clause contained no words of inheritance, the Court looked to the habendum and warranty clauses to find a conveyance in fee simple, both of which contained the words “his heirs and assigns,” traditional words of inheritance connoting a fee-simple estate. This Court disagreed with the argument that the handwritten clause diminished the interest conveyed to a life estate with a remainder to the grantee’s heirs. This Court recognized that handwritten portions of a deed take precedence over printed language when there is a conflict between the two, but the handwritten clause failed to clearly designate a life estate.
 

 “The handwritten clause does not limit the grantee’s estate to ‘for his life’ or ‘at his death.’ The language ‘is not to sell above described lands’ is certainly no indication of a life estate as such estates are as alienable as fee simple estates. And the language ‘but it is to go to his heirs’ indicates merely words of limitation or inheritance.”
 

 388 So.2d at 951. The language in the handwritten clause did not clearly designate a life estate in derogation of § 85-4-2. Instead, the language was in the nature of a restraint on alienation and, viewed as a whole, appeared to be an attempt to create a fee-tail estate, and fee-tail estates are converted into fee-simple estates under § 35-4-3. This Court also noted that the parties’ conduct indicated their intention that the deed conveyed a fee-simple estate.
 

 Hacker
 
 does not support the trial court’s conclusion that the granting clause was ambiguous. In
 
 Hacker,
 
 this Court discussed deeds in three prior cases, noting that in those deeds the language clearly and expressly defined a life estate with the “telltale language of ‘for his life’ or ‘at his death,’ ” 388 So.2d at 951, whereas the handwritten language in the deed at issue in
 
 Hacker
 
 did not clearly convey a life estate. Here, the granting clause clearly contains the “telltale language” of a life estate.
 

 We recognize that the warranty clause of the deed contains language that refers to the Buxtons’ “heirs, executors, and assigns.” There should be no reason to refer to the Buxtons’ executors when their interest is a life estate, because there could not arise an occasion where a warranty of title could flow to the executor of the estate of a deceased holder of a life estate, because that estate would necessarily terminate upon the death of the life tenant and there would be no interest for a personal representative to thereafter ad
 
 *1019
 
 minister.
 
 [2]
 
 However, an ambiguity in a warranty clause would not conflict with an unambiguous granting clause because a warranty clause does not convey title. The purpose of the warranty clause is to indemnify the purchaser against loss or injury due to a defect in the title. It is well settled that
 

 “the granting clause in a deed determines the interest conveyed, and that, unless there be repugnancy, obscurity or ambiguity in that clause, it prevails over introductory statements or recitals in conflict therewith, and over the haben-dum, too, if that clause is contradictory of or repugnant to it.
 
 Webb v. Webb’s Heirs,
 
 29 Ala. 588, 606 [(1857)];
 
 McMillan v. Craft,
 
 135 Ala. 148, 33 South. 26 [ (1902) ];
 
 Gould v. Womack,
 
 2 Ala. 83 [ (1841) ];
 
 Kershaw’s Ex’rs v. Boykin,
 
 1 Brev. (S.C.) 301 [ (1803) ];
 
 Huntingdon v. Havens,
 
 5 Johns. Ch. (N.Y.) 23 [ (1820) ];
 
 Green Bay, etc., Co. v. Hewitt,
 
 55 Wis. 96, 12 N.W. 382, 42 Am. Rep. 701 [(1882)]; 13 Cyc. 619, 666; 9 Am. & Eng. Ency. 139, and cases cited on note 1 to text on page 140; 17 Am. & Eng. Ency. 8, and cases cited in note 6; Devlin on Deeds (2d Ed.) § 838a;
 
 Wilkins v. Norman,
 
 139 N.C. 40, 51 S.E. 797, 111 Am. St. Rep. 767 [ (1905) ];
 
 Berridge v. Glassey,
 
 112 Pa. 442, 3 Atl. 583, 56 Am. Rep. 322 [ (1886) ];
 
 Whetstone v. Hunt,
 
 78 Ark. 230, 93 S.W. 979 [(1906)]; 8 Am. & Eng. Ann. Cas. 443; 3 Wash. Real Prop. (6th Ed.) § 2360. The reason underlying the rule that introductory statements and recitals must yield to the granting clause is that they are nonessential to the validity of the deed, while the granting clause is its very essence. It has been said that the ha-bendum must give way, because the granting clause is necessary to make the deed effective, while the habendum clause is not.
 
 [Ratliffe
 
 ]
 
 v. Marrs,
 
 87 Ky. 26, 7 S.W. 395, 8 S.W. 876 [ (1888) ]. And by another court it has been said: ‘It is a rule in the construction of deeds that of two repugnant clauses therein the first shall prevail against the second; and, according to this rule, the meaning of the premises shall not be changed by the words of the habendum as to irreconcilable differences.’
 
 Chamberlain v. Runkle,
 
 28 Ind.App. 599, 63 N.E. 486 [ (1902) ];
 
 Hunter v. Patterson,
 
 142 Mo. 310, 44 S.W. 250 [(1898)];
 
 Budd v. Brooke,
 
 3 Gill (Md.) 198, 43 Am. Dec. 321, 338 [ (1845) ].”
 

 Dickson v. Van Hoose,
 
 157 Ala. 459, 466-67, 47 So. 718, 720-21 (1908); see also
 
 Moss v. Williams,
 
 822 So.2d 392 (Ala.2001).
 

 In
 
 Porter v. Henderson,
 
 203 Ala. 312, 317-18, 82 So. 668, 673-74 (1919), the Court cited a federal case explaining why other clauses must yield to the granting clause:
 

 “In
 
 Dickson v. Wildman,
 
 183 Fed. 398, 403, 105 C.C.A. 618, 623 [ (1910) ], Judge Shelby said:
 

 “ ‘If it were conceded that there was repugnancy between the granting clause on the one side and the preliminary recitals and the habendum on the other, and that the conflict was such that the true intent of the grant- or could not be ascertained, it is manifest that the court must decide which part of the deed shall prevail. The rule in such case is that the granting clause determines the interest con
 
 *1020
 
 veyed, and when it is clear and unambiguous, as in the deed in question here, it prevails over introductory recitals in conflict with it, and prevails also over the habendum, if that is in conflict with it. The reason sometimes given for the rule is that a deed founded upon a valuable consideration is to be construed most strongly against the grantor, and, when the conflict is in the habendum, that the grantor in the latter part of the deed will not be permitted to deny or retract the grant previously made. The rule is very old, and it may be that it is founded on an effort to enforce the cardinal rule to ascertain and give effect to the intention. The granting clause is naturally looked to see what it was intended to convey, whereas recitals are often merely introductory, and are not a necessary part of the deed. The granting clause is the very essence of the contract. It is required to transfer title, but the habendum clause is not absolutely necessary to make a deed effective. Where a conflict exists, therefore, in the different parts of a deed, the true intent of the grantor as to what was intended to be conveyed is more likely to be found in the granting clause. The settled rule of construction in Alabama and in many other jurisdictions is that in case of repugnancy between the granting clause and other parts of the deed the former will prevail/ ”
 

 Although Section § 35-4-2 provides that every conveyance of real estate conveys all the grantor’s estate unless the intent to convey a lesser estate expressly appears or is necessarily implied in the terms used in the granting clause, such an intention to convey a lesser estate appears in the granting clause here and, thus, § 35-4-2 has no field of operation. The only ambiguities are in the warranty clause, and, as discussed, the warranty clause must yield to an unambiguous granting clause.
 

 Conclusion
 

 As we stated, the real inquiry in construing the terms of a deed is the intent of the parties, especially that of the grantor, and if that intent can be ascertained from the instrument, there is no need to resort to arbitrary rules of construction. The intent of the grantor is ascertained from the words used in the four corners of the deed. The intention of the parties will be presumed to accord with the established meaning of the words of settled legal import. “Otherwise, there would be little stability of land titles.”
 
 Creswell v. Bank of Greenwood,
 
 210 S.C. 47, 41 S.E.2d 393 (1947). Accordingly, the judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, STUART, and MURDOCK, JJ, concur.
 

 [1]
 

 . The record does not indicate who Blake Horton and Devon Horton are or the nature of their relationship with the Buxtons.
 

 [2]
 

 . A reference to the Buxtons’ heirs would not create an ambiguity as to the life estate because the grantors would be warranting title to the heirs who would receive the property upon the end of the life estate. Similarly, the grantors would also be warranting title to any potential assignees of the grantees’ life estates and, hence, no ambiguity.